1-3-2-1-3-7 Sherman Wagner v. Paul Klee Oral argument, 15 minutes per side Mr. Wise for the appellate Good morning, I'd like to reserve 3 minutes for public comment Thank you Sherman Wagner is currently serving a life sentence for first degree murder in the state of Michigan based on a trial that was fundamentally flawed Essentially the flaws in that trial were brought about both by his trial counsel and the assistant prosecuting attorney on the case Mr. Wagner was accused and convicted of being involved in essentially a drug rip-off, a homicide based not on any physical evidence but on the testimony of two witnesses and, unfortunately, based on his own testimony and the prosecution's misconduct in conducting his cross-examination Essentially, I'd like to read to the court the key passage of that direct examination by his trial counsel because that's what leads to much of the claims of prosecutorial misconduct in this case He was asked by his trial counsel, have you ever been arrested or convicted of a crime involving violence? I'll point out to the court that that's a compound question, arrested or convicted and I'm not sure what relevance at all any of his arrests would have on his credibility But nonetheless, counsel asked this poorly framed question to which Mr. Wagner responds No sir, only thing I've ever been arrested or convicted I mean, the only thing I ever did any jail time convicted for was stolen cars, ever So essentially, Mr. Wagner admits that he is a car thief and he is a car thief and he spent a lot of time in prison prior to this alleged rip-off and murder for auto theft The defense attorney then asked, did you ever do anything? Have you ever been charged with shooting a gun? or having a gun or anything like that to which Mr. Wagner answers, been taken to jail for homicide So at this point, Mr. Wagner has admitted that he is a car thief and has admitted that he has been arrested for homicide The prosecution then gets up on cross-examination and essentially accuses Mr. Wagner of lying about his past criminal record and whether or not he's been arrested for homicide That alone is improper impeachment at this point But the prosecutor doesn't just say, didn't you lie to us about being arrested for homicide She begins to describe in detail accusations against him in other homicide cases Essentially testifying in front of the jury that Mr. Wagner is a murderer and she knows he's a murderer and she knows that he's involved in what the evidence in these other murders is and shares some of that with the jury including out-of-court statements by other witnesses that Mr. Wagner was involved in at least two homicides and that he's under investigation in seven homicides There is no possible purpose for the prosecutor to do this except to assassinate Mr. Wagner's credibility Well, you're entitled to assassinate their credibility Well, I'm sorry, not really so much his credibility but so much to assassinate his character and portray him as a dangerous and violent person Because his credibility on whether or not he's been involved in other homicides one isn't particularly, I mean, there's no evidence no record evidence that the prosecutor is going to put in there except for these accusations I mean, it happens to be that's what the testimony is about If a person says, you know, I never painted any paintings you can contradict that by showing paintings So... But the prosecutor never shows the paintings, essentially The prosecutor... So is the... I mean, also generally on cross-examination you're entitled to ask questions of that sort Is the impropriety not following up with the evidence or would he have been entitled to show the evidence Usually you can ask those questions in most contexts and you have to live with the answer Exactly And here the prosecutor rather than... I mean, does not live with the rule that you're limited to extrinsic evidence doesn't really actually try to introduce as evidence extrinsic evidence but instead uses the power and authority of her office as the prosecutor to say, look, I know you're lying about it I misspoke or you misheard or maybe I didn't get it right but you're usually not entitled to introduce evidence to prove what you asked You have to live with the answer if they say they didn't do it That's correct And I agree with that as a principle And in fact, had they said, well, your honor, we want to bring in people to show these other things they might well not have been allowed to But we don't know and we don't know what the court would have said had defense counsel at that point made an objection to the prosecutor's line of questioning Well, I guess there was an in limine ruling that said the prosecution can't bring in his prior arrests I think for homicide, right? Correct Unless he opens the door Correct He did open the door Well, I disagree that he opened the door because... Could any fair-minded jurist think he opened the door when he said he hadn't been arrested for anything but, you know, car stuff? I respectfully disagree Okay, I mean, that's why we're here Yes, and that's why I read the question at the beginning Okay Because what he said, again, his defense counsel asked a compound question Okay Questions are not evidence And the question is, have you ever been arrested or convicted? And he does respond, no And then he immediately says, he does mention arrested or convicted And then he said, the only thing I ever did was... Did any jail time for Well, did any jail time for, convicted for with stolen cars And then, in response to the question about whether or not he did anything charged with shooting a gun, having a gun He says, I've been taken to jail for homicide So there is, at this point... He says that on direct? He says that on direct So at this point, there is really no need to impeach his credibility on whether or not he's been accused on homicides Now, you could follow up on it, maybe you've been charged with another homicide other than this one But then to get into the particular... To, one, accuse him of, you know, deliberately being a liar, as the prosecutor repeatedly does And then to, again, bring in not... He went overboard, I'll grant you that The state court even says, did not exhibit flagrant misconduct Negative pregnant implication that there was misconduct And that has... But then that misconduct combined with the testimony of Witness Edwards Who claimed that he had known... And again, this was brought up on cross-examination But this is the prosecution's witness Claimed that he had known Mr. Wagner for something like nine or ten months, almost a year before this incident Because they'd been selling drugs together And claimed that he had been in a drug house with Mr. Wagner three days before this when he was arrested Was false testimony by the prosecution's witness Mr. Wagner had been in prison Until weeks before the incident The prosecution had a proof of incarceration that was provided by the defense through discovery The defense did impeach Mr. Edwards' testimony about being in the drug house with him By calling the officer who arrested him there Who said, no, it wasn't Mr. Wagner, it was somebody else But that is... And it's important for the court to realize in this case That the two witnesses against Mr. Wagner were Mr. Edwards and Mr. Johnson Mr. Edwards was not impeached about Mr. Wagner's prison record The false statement there He was with respect to being in the drug house Subsequent to the trial during Mr. Wagner's post-conviction investigation Mr. Edwards issued a sworn statement from prison Indicating that he recanted his testimony That he was coerced by the police into giving that testimony That Mr. Wagner had nothing to do with the shooting in this case You see a lot of recantations after the fact in habeas cases And I realize that that is a common occurrence And it's something we struggle with as defense lawyers and judges Because it raises doubt But given the conduct in this case by the prosecutor Given the fact that Edwards demonstrably testified falsely about his relationship with... Let me specify that because As I understood it Edwards was... Your man was out of prison for some period of time In which Edwards could have or did know him Is that correct? That is... If he said... As I recall it wasn't even during the past year As opposed to I met him on April 3rd Which was a date when we know he was in prison Wasn't that really the distinction? That's accurate He did potentially make it sound like he'd known him for a long time As opposed to having had the opportunity to know him for a shorter time Is that fair? In terms of what the testimony was? I think that's a fair interpretation Although as I interpret it It seems that Mr. Edwards was saying that he knew Mr. Wagner For a time frame longer than possible Given Mr. Wagner's incarceration You had said something like that the Prosecution had his Wagner's prison record Is that sort of the knowledge aspect? I mean not that they had presented that fact in some other forum But that they should have had that piece of paper? I think they did have that piece of paper There was evidence Trial testimony Did the defense have it? Did the defense know? Yes, the defense did have it So if it was a big deal They could have attacked it right then If this difference in time was a big deal They would have said Hey, you claim you knew him for a year He's been in prison for 11 of those months Or whatever the facts are Is that also fair? I think that is also fair But essentially this gets And I'm running out of time So I'll mention the claims of ineffective assistance of trial counsel Both for failing to object to the prosecutorial misconduct The ineffective assistance of appellate counsel For failing to object to both the prosecutorial misconduct And challenging the trial counsel's performance in doing so And ask the court to look at all these facts very carefully Did the defense actually realize that Mr. Wagner Was convicted by, in part, the antics of a prosecutor? Okay, but on the Edwards piece She really nails him down You're sure about that? Yeah, I'm sure You're sure? I'm sure Right? She does that She doesn't raise the point about Oh, eliciting false testimony And then she completely shreds Edwards In her closing Based on the I'm sure stuff She just takes him apart And you're talking about defense counsel? Yeah Yeah, I'm sorry Defense counsel was a him and the prosecutor was a him I'm sorry It's been a long morning, I'll tell you I understand I'm sorry I mean, isn't that a fair reading? That she laid a trap And she sprung it in closing When the prosecutor couldn't do anything To try to rehabilitate this guy That she just completely demonstrated to be a liar Well, I think counsel did a okay job Cross-examining Edwards Counsel could have done more And because the prosecutor let Edwards testify falsely Along with her other misconduct There's certainly a basis here for granting the right Okay, thank you, counsel I have your three minutes for rebuttal  May it please the court Andrea Christensen Brown of the Michigan Attorney General's Office Appearing on behalf of Warden Paul Klee The district court rejected Mr. Wagner's prosecutorial misconduct And the related ineffective assistance of counsel claims on the merits Although we do still argue that those claims are barred By the procedural default You might slow down just a bit My brain can't process it Yes, it's been a long morning We do still argue that those claims are barred By the procedural default doctrine But either way He cannot show that he's entitled to relief Under AEDPA's deferential standard Now, the two portions of the record that Wagner takes issue with The first, as already discussed Was the prosecutor allegedly improperly questioning Mr. Wagner On two unsolved murders To build on what Your Honor, Judge Kethledge said I mean, who cares whether he can still be charged? I mean, she just completely overdid this, didn't she? I think that's fair I think it's fair that she went above and beyond what she did Oh, okay, what I said was fair Yes, yes I thought you were saying what she did was fair I was like, all right, let's talk about that No, what Your Honor said is fair However, it's not often that a prosecutor gets the chance To cross-examine a defendant After he admits that he has been arrested for homicide So perhaps that got the best of her However So what do we do with that? She went overboard She may have gone overboard I'm not going to concede that But she may have gone overboard But it's not prosecutorial misconduct Yeah, it's a 404B issue, I guess Yes Type issue I think that they're interrelated However, it's not prosecutorial misconduct When defendant opens the door And as Your Honor also stated There was a pretrial ruling before any evidence taking Was taken here Where the trial judge specifically said Prosecutor, you cannot get into the uncharged homicides Unless the door is opened And defendant himself, during direct Swung that door wide open When he said he had never been arrested for a violent crime When he denied carrying any guns He says, I don't carry guns I steal cars, that's what I do And also then when he volunteered That he had been arrested on homicide Well, didn't that sort of close the door then? When he says, yeah, I was arrested for homicide That I would say still is within the door opening Yes, you've alleged that you've done all this Let's talk about that And perhaps with the homicide Little above and beyond However, with the I don't carry guns She rightfully impeached him with arrests For carrying a concealed weapon And for armed robbery, also a violent crime So that being said There's no prosecutorial misconduct When the defendant opens the door And I would submit that Counsel didn't object To this questioning Which, as Your Honor stated Sometimes goes above and beyond Because he knew that his client opened the door So any objection in that respect Would have been futile, I would submit Now, turning to the alleged Eliciting of perjured testimony And failure to correct that perjured testimony In Brother Counsel's pleadings It says repeatedly, prosecutor elicited Prosecutor elicited And while this is not a portion of any test Prosecutor didn't elicit that information Defense Counsel did So, that's first We're talking about Edwards now? Yes And this is on his director cross It was during the cross It was during Defense Counsel's cross Of him, yes But I also think that A very preliminary question that we have to answer Is whether or not this is actually perjured testimony We submit that there is no perjured testimony here In either instance How long he knew the defendant Before the shooting And who was arrested at the house Three days before the shooting Either of those things were not perjured testimony I would submit that it was mistaken I would submit that it was possibly Inconsistent And I would submit that it was possibly incorrect However Inconsistencies are not perjured testimony We know that through this Circuit's decisions In United States vs. Lakhmandi And we know that through This Circuit's decision in Coe vs. Bell Which Your Honor Judge Boggs authored Inconsistencies are not perjured testimony So this is not perjured testimony at all It completely takes that out of that realm If mistaken Or inconsistent testimony Was equated with perjured testimony Then we would have Giglio claims In every single case that's tried It would be almost impossible To find a case where there's not Some sort of inconsistent testimony What's your sense of the import? Whether we characterize it as inconsistent Or perjury The import of that testimony in the trial I would suggest that the import Is negligible Going to the materiality test If the court was to find that this was perjured testimony Which I submit it's not The materiality here We're talking about two portions of Antonio Edwards testimony Who had already been convicted Of second degree murder He testified in this case And defense counsel Completely annihilated him In cross-examination And also in closing And I would also like to point out That with respect to the ineffective assistance of counsel Claim for failing to object To the alleged perjured testimony Defense counsel addressed Both of those pieces Either through presenting an impeachment witness That said That defendant is not the defendant that I arrested At that house three days before the killing And also Defense counsel Either defense counsel or the prosecutor Wasn't going to jump right up when the witness said I knew him for eight or nine months Before the shooting And say wait a minute you were in jail at that point Defense counsel is not going to put His client's criminal record into issue When it hasn't been put into issue yet Although I don't know which way it cuts But I When I said couldn't defense Have put on the fact about Edwards I notice at 104 That The defendant's own testimony He says How can they say it's possible that I knew him for a year I was in prison Show them the records I guess they didn't actually show them the records But he makes that point quite Vividly That is true and defense counsel Made a big Point about that in his closing argument That it's not possible for you to believe Antonio Edwards because We have testimony from Defendant himself that he was in jail at that point So he couldn't have known him So defense counsel did an excellent job Of Cremating if you will Antonio Edwards Testimony and Just To put in perspective Antonio Edwards testimony with the rest of the witnesses The Primary witness here and the Witness that the prosecution relied on Almost exclusively especially by Closing argument was Thelius Johnson and he was one of the Victims he was there when he was shot He positively identified Sherman Wagner who we also know is Actually Bobby Wagner Positively identified him And identified him consistently Throughout So that was the crux of the prosecutor's case Nothing having to do with Antonio Edwards the fact that Antonio Edwards Said that defendant was there during Testimony that was just the icing on the cake And I believe that that is How the prosecutor termed it during her closing Argument she said she didn't need Antonio Edwards she had everything she needed from Mr. Johnson And I would just like to close Saying that this court is Well aware that it was a difficult Standard to meet And here not only was there no Error but there's no error that Can be Where there can be a possibility for a fair minded Disagreement I'm happy to answer any more Questions if not I can cede the rest of my time Anything else Thank you counsel Otherwise you have three minutes for rebuttal Thank you I'd like to touch on the importance of Mr. Johnson to the prosecution's case Which is True without Edwards he's the only remaining Witness however In the post conviction proceedings It came Both during trial and then some record Evidence was developed in the post conviction Mr. Johnson was Inconsistent with respect to his Description of the weapon used In this case I believe he testified it was a .25 caliber Handgun the autopsy report indicated That there were bullets from .357 or .380 Something along those calibers And a .22 Then Mr. Johnson also testified He was the victim That's correct but he described the handgun That was involved I mean how great an opportunity Did he have to look at the handgun While he's getting shot by it As good an opportunity as he did to look at Whoever did the shooting Whether that's Mr. Wagner or not He also testified But when you said that did you imply That he was hit by two different bullets The deceased Mr. Moss Was killed by Bullets from two different guns Mr. Johnson A .22 and a .25 Might not be that different .357 magnum I haven't faced one but in the movies They're pretty big but I wouldn't think a .22 and a .25 Would have to be that different Then Mr. Johnson also testified That after He testified he himself was shot During this robbery homicide And that after that he went to St. John's Hospital in Detroit To receive treatment The post-conviction investigation by counsel Indicated that there were absolutely no medical records Of Mr. Johnson Receiving that treatment that he described But we don't know what he was shot by We don't know that he was shot Or received treatment at all But the fact of the matter Is that Mr. Johnson is not the most Credible witness in the world There was that evidence Of either of those Brought out at trial I don't think the medical record fact was brought out At trial because that was developed I mean certainly The description of the Handguns involved was brought out at trial The medical records weren't brought out at trial Because that was raised But I mean the contradiction You said he testified About it being a .25 I said What you call a difference Was that brought out at trial The medical examiner's report was Okay so they said Why did you call it a .25 When it was really a .357 I don't believe There's any cross-examination Of Mr. Johnson on that But my point is essentially That this is a weak case For the prosecutor without the Misconduct, without the testimony Of Mr. Edwards And to the extent That the court can Look to the manifest miscarriage of justice To excuse any procedural default We'd ask the court to consider that And grant the writ Thank you Counsel That case will be submitted And the clerk may call the next case